# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING



**FILED**

*12:06 pm, 6/22/20*

**U.S. Magistrate Judge**

| | |
|---|---|
| JORDAN STRAUSS, *individually*; JORDAN STRAUSS, *co-wrongful death representative and on behalf of all statutory beneficiaries on behalf of Michelle M. Patterson*; ERIC STRAUSS, *individually*; ERIC STRAUSS, *co-wrongful death representative and on behalf of all statutory beneficiaries on behalf of Michelle M. Patterson*; STEPHEN STRAUSS, *individually*; STEPHEN STRAUSS, *co-wrongful death representative and on behalf of all statutory beneficiaries on behalf of Michelle M. Patterson*; MICHAEL STRAUSS, *individually*; and MICHAEL STRAUSS, *co-wrongful death representative and on behalf of all statutory beneficiaries on behalf of Michelle M. Patterson*, | |
| Plaintiffs, | |
| vs. | Case No: 2:20-CV-00020-MLC |
| BRYAN E. PATTERSON, *trustee for William E. Patterson Declaration of Trust dated September 22, 2009*; and GREGORY E. PATTERSON, *trustee for William E. Patterson Declaration of Trust dated September 22, 2009*, | |
| Defendants. | |

## ORDER DENYING DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendants' Rule 12(b)(6) Motion to Dismiss, which was filed on April 1, 2020. Plaintiffs filed a response on April 26, 2020, and Defendants filed a reply in support of their Motion to Dismiss on May 6, 2020. The Court has now considered the Motion and is fully apprised of the facts and legal arguments giving rise to the Motion.

## **BACKGROUND**

This case arises out of an airplane crash that occurred on February 18, 2018. ECF_1, ¶ 6. Michelle M. Patterson was fatally injured when she was flying in an aircraft owned by the William E. Patterson Trust ("the Trust") and operated by Mr. William E. Patterson, an allegedly authorized agent and representative of the Trust. *Id.* ¶¶ 6, 8, 17. Upon investigation, the National Transportation Safety Board found no mechanical cause for the crash and determined the crash "was due to the pilot's loss of control in flight." *Id.* ¶ 18. Plaintiffs claim Mr. Patterson owed Ms. Patterson duties of care as his passenger and breached those duties when he negligently flew the aircraft. *Id.* ¶¶ 20–21. According to Plaintiffs, Ms. Patterson's death was a proximate result of Mr. Patterson's acts and omissions as pilot and, accordingly, the statutory beneficiaries entitled to assert claims for damages were damaged. *Id.* ¶ 23. Plaintiffs maintain that the Trust "is vicariously liable for the acts and omissions of its trustees, agents, and representatives." *Id.* ¶ 17. Therefore, because Plaintiffs allege that Mr. Patterson piloted the Trust's aircraft "with the actual knowledge, authority, and permission of the Trust, and as its agent and representative," they maintain the Trust is vicariously liable for his acts and omissions. *Id.* ¶¶ 17, 23.

2

On February 11, 2020, Plaintiffs filed their Complaint and Demand for Jury Trial against Bryan E. Patterson and Gregory E. Patterson as Co-Trustees of the Trust. ECF_1. Plaintiffs claim the aircraft was insured by QBE Insurance Corporation ("QBE") and the insurance policy ("the QBE Policy") "provided insurance proceeds of $1,000,000 for passengers injured in a crash." *Id.* ¶ 11. In their Complaint, Plaintiffs limit any settlement, resolution, or enforcement of judgment in this matter to the proceeds of the QBE Policy. *Id.* ¶ 26.

Defendants filed a Rule 12(b)(6) Motion to Dismiss ("the Motion") on April 1, 2020. ECF_8. Defendants argue Plaintiffs' claim should be dismissed because (1) "Plaintiffs failed to file their claim within the 120-day statutory period permitted for claims against a revocable trust" and (2) an agency relationship cannot exist, as a matter of law, between the then acting trustee, William Patterson, and the alleged pilot-agent, who was also William Patterson." ECF_9 at 2. In response, Plaintiffs argue that Mr. Patterson was piloting the aircraft as an agent of the Trust. ECF_13 at 2. Therefore, the principal was the Trust and agent was Mr. Patterson so there is no bar to vicarious liability. *Id.* Additionally, Plaintiffs maintain the 120-day statutory period for claims against a revocable trust does not apply here, because this is a claim limited to the proceeds of a liability insurance policy—which does not fall under the statute. *Id.* Defendants' reply argues that a claim against insurance counts as a claim against the revocable trust's assets under the statute and is limited by the 120-day statutory period. ECF_15 at 2. Moreover, Defendants maintain that the statute does not address vicarious liability or agency

relationships with regard to a revocable trust. *Id.* The parties' legal arguments and any additional relevant facts are set forth in greater detail below.

The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1332(a)(1). Under 28 U.S.C. § 1332(c)(2), diversity is based on the citizenship of a decedent, which here was New Jersey. ECF_1, ¶ 12. Additionally, the citizenship of a trust is determined by the citizenship "of all the entity's members." *Conagra Foods, Inc. v. Americold Logistics, LLC*, 776 F.3d 1175, 1176 (10th Cir. 2015) (quoting *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990)). Trustees are both citizens of Colorado, so complete diversity exists. ECF_1, ¶ 12. The amount in controversy for this wrongful death action also exceeds seventy-five thousand dollars, as is required by statute. 28 U.S.C. § 1332(a); ECF_1, ¶ 13. Therefore, the Court has jurisdiction to consider Defendants' Motion to Dismiss.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure allow parties to assert certain defenses by motion, including "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). While the Court accepts as true the allegations contained in a complaint, this tenet "is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A claim is

4

plausible if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678).

If "matters outside the pleadings are presented to and not excluded by the Court," a Rule 12(b)(6) motion to dismiss "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion" and "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). In sum, the Court may convert this Motion to a motion for summary judgment if it relies on matters outside the Complaint but need not do so if the matters were adopted by reference in the Complaint.

## DISCUSSION

This Motion revolves around two major issues. The first issue is whether Plaintiffs' claim is barred under the 120-day limitation on actions by creditors in Wyoming's Uniform Trust Code. The second issue is whether the Trust can be vicariously liable for Mr. Patterson's actions.

### A. Time Limitation on Creditors' Claims Against the Assets of a Trust

The Court will first turn to the question of whether Plaintiffs' claim is time-barred under the Wyoming Uniform Trust Code ("WUTC"). The text of the statute regarding limitations on actions by creditors states:

(a) Subject to the rights of persons dealing with a fiduciary as provided in W.S. 4-10-1013,[1] a creditor may file a claim against the assets of the trust or commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death within the earlier of:

(i) Two (2) years after the settlor's death;

(ii) One hundred twenty (120) days after the first publication of a notice of the intent of the trustee to have the property of the settlor distributed as permitted under the terms of the trust. The notice shall be published once per week for two (2) consecutive weeks in a newspaper of general circulation in the county or counties where venue of the trust is properly established as provided in W.S. 4-10-204; or

(iii) One hundred twenty (120) days after known creditors have been mailed notice, by certified mail return receipt requested.

Wyo. Stat. Ann. § 4-10-507(a)(i)–(iii) (West 2020).  In their Motion, Defendants argue that, because notice was mailed to Plaintiffs on December 5, 2018, and Plaintiffs did not file their claim until February 11, 2020, the claim is clearly barred under the statute.  ECF_9 at 6–7.

First, the Court should point out that the foundation of Defendants' argument is that Wyoming courts have strictly upheld statutory time limits on creditor claims where creditors have failed to file within the applicable time period.  *See, e.g.*, *In re Estate of George*, 265 P.3d 222, 233–234 (Wyo. 2011) (construing W.S. § 4-10-507 to bar a contract claim against the trust where the claim was untimely filed); *In re Baker's Estate*, 483 P.2d 513, 515–16 (Wyo. 1971) (holding a wrongful death action was untimely under Wyoming's analogous time limitation in the Wyoming Wills, Decedents' Estates and

---

[1] W.S. § 4-10-1013 relates to the protection of persons dealing with a fiduciary and is not relevant to the Court's analysis in this case.

Probate Code). There appears little question that the Court should strictly adhere to the time limitation set forth in W.S. § 4-10-507, *if* this claim qualifies as a claim against "assets of the trust" because Plaintiffs would have only had until April 4, 2019 to file their claim. But Plaintiffs maintain that the claim is not against an "asset" of the Trust. ECF_13 at 8–13. Therefore, the true issue the Court must determine is whether a claim against the proceeds of a liability insurance policy qualifies as "a claim against the assets of the trust" pursuant to the statute.

The term "asset" is not defined in the WUTC. *See generally* Wyo. Stat. Ann. § 4-10-103. As is discussed in more depth below, we cannot look to the draft Uniform Trust Code ("draft UTC"), which was used to develop the WUTC, because this provision is unique to the WUTC. Additionally, the parties' briefs and the Court's research indicate that there is only one case pertaining to W.S. § 4-10-507, which finds that the claim at issue was time-barred. *In re Estate of George*, 265 P.3d 222, 234 (Wyo. 2011). The creditor's claim in that case regarded work done on real estate owned by the trust. *Id.* at 229. Such a claim was clearly against an asset of the trust, so the case did not provide any guidance as to the question presented herein. *See generally id.* Thus, the Court is left with minimal caselaw to aid in interpreting the subject code section.

The one Wyoming case that has come closest to discussing whether an insurance policy is an "asset" in the context of estates and trusts is *In re Baker's Estate*. That case briefly discusses whether an insurance policy could be an asset under former versions of the Wills, Decedents' Estates and Probate Code. *In re Baker's Estate*, 483 P.2d at 515. Plaintiff argued that the liability insurance policy covering a plane should have been

7

included as an asset of the estate. *Id.* The court stated it could "understand how an insurance policy might be considered as a potential asset, if a claim is made against the estate in sufficient time and in such manner that there would be a possibility of judgment being obtained in connection with the claim." *Id.* However, the court found the issue of whether the liability insurance policy is an asset was moot because the plaintiff had not timely filed the creditor's claim. *Id.*

Defendants also cite to a Wyoming estate case where a plaintiff's claim was barred because the plaintiff failed to file the claim within the time limitation and, consequently, claimed that there was legislative intent to exempt claims where the claimant was not seeking an asset of the estate. *Lo Sasso v. Braun*, 386 P.2d 630, 631 (Wyo. 1963). Plaintiff sought to circumvent the claim filing requirement by arguing that the legislative intent was to allow a claim against the liability insurance policy in that no assets of the estate were sought. *Id.* at 631–32. The problem for the plaintiff was that there was no language in the statute to support any such legislative intent, and the time limitation was mandatory for all claims, not just claims against the assets of the estate. *Id.* The court was bound to the language of the statute, while recognizing the harshness of the result. *Id.* The court explained that "[i]f the legislature did in fact have such an intention, it failed to express it." *Id.* at 631. Additionally, the court noted that the cause of action was against the estate, not the insurance company. *Id.* at 632.

Neither *In re Baker's Estate* or *Lo Sasso* provide guidance for the pending question. When these cases were decided, the probate code did not limit creditor claims against an estate to those pertaining to "assets" of the estate, and it still does not do so. *See id.* at 631;

Wyo. Stat. Ann. § 2-7-703 (stating that "all claims" shall be timely failed and "any claim" not properly filed is "barred forever").  W.S. § 4-10-507 contains the language which was missing in the statute at issue in the above cases.  In effect, plaintiffs in those cases were asking the courts to insert a limitation to the estate filing requirement for claims not seeking assets of the estate.  While the courts could not add such language, the Wyoming Legislature did in the WUTC.  Pursuant to W.S. § 4-10-507, only claims seeking assets of the trust are time barred.  The true issue is whether Plaintiffs filed a claim against the "assets" of the Trust, and neither *In re Baker's Estate* nor *Lo Sasso* can answer the question.

Cases from other jurisdictions do not provide a definitive answer on this issue either. On one hand, perhaps an insurance policy could be considered an asset once judgment is obtained. *Steffens v. Am. Standard Ins. Co.*, 181 N.W.2d 174, 178 (Iowa 1970). In *Steffens*, the plaintiff alleged that he was injured while riding in an automobile. *Id.* at 175.  The plaintiff first sued the driver of the automobile and recovered judgment against him.  *Id.* at 175.  When the judgment was not paid, plaintiff sued to recover against the insurers, but the defendants moved to dismiss on the ground that the suit was not timely filed under the code section limiting actions against an insurer. *Id.* at 175.  The court in *Steffins* noted that, once a judgment against an insured under a liability policy is entered, "[t]he amount of the policy to the extent of liability incurred by the insured is deemed to be an asset of the insured." *Id.* at 178 (quoting 22 APPLEMAN, INSURANCE LAW & PRACTICE, § 14565 (1947)).

On the other hand, courts have considered whether a bankruptcy estate would have a right to insurance policy proceeds when determining whether the policy is part of the

estate.  The Fifth Circuit asked whether proceeds of a liability insurance company were part of a debtor's estate. *In re Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993).  The court explained that the true question was who owned the *proceeds* of the liability policy. *Id.* at 55.  Because a debtor would have no right to the proceeds of a liability insurance policy— as the proceeds are payable to those *harmed* by the debtor—the court concluded the proceeds of the liability policy were not part of the debtor's estate. *Id.* at 55–56.  Thus, the appellants could pursue a lawsuit against the debtor to collect a judgment "solely from the proceeds of his malpractice liability policy."  *Id.* at 53, 55–56.  Under this logic, determining whether the proceeds of an insurance policy are property of the estate, or assets of a trust in this pending matter, should be considered on a case-by-case basis, and the answer depends on the type of insurance policy at issue. *See In re Scott Wetzel, Inc.*, 243 B.R. 802, 804 (M.D. Fla. 1999) (citing *In re Edgeworth* and explaining that "proceeds of the liability insurance policies are not property of the estate because the debtor would not have the right to keep the funds").

Neither of these cases are definitive, but they can provide guidance to this Court in its analysis of what may be considered "assets of the trust" under the WUTC.  The Court finds that these cases are persuasive in supporting Plaintiffs' argument that the proceeds of a liability insurance policy are not "assets" of the Trust.

Defendants' argument that claims against the proceeds of a liability insurance policy should be barred by the WUTC's time limitation for creditors' claims is largely based on the probate code.  Defendants frequently remind the Court that revocable trusts are sometimes used as a "form of will" to avoid probate transfer of a settlor's estate. *See, e.g.*,

ECF_9 at 3, n.2; ECF_9 at 5, n.3; ECF_15 at 4, n.3.   Another example is Defendants' contention that many probate codes expressly include an exception on time limitations for claims to the limits of insurance protection.  *See, e.g.* Mont. Code Ann. § 72-3-803 (West 2019) (stating explicitly the time limitation for "all claims," including tort claims, against an estate while creating an exception for claims to the limits of insurance protection ); Colo. Rev. Stat. Ann. § 15-12-803 (West 2020) (same); ECF_15 at 5.  It is true that revocable trusts are used as an alternative to wills and that some legislatures explicitly create an exception for claims to the limits of insurance protection in probate codes.  Yet, the Court declines the opportunity to conclude that it should treat the Wyoming probate and trust codes analogously in this matter, where there is clearly different language under Wyoming law as to when claims against an estate or trust are barred by time limitations.  This matter is controlled by the language of the WUTC.   The Court also declines the opportunity to conclude that the Wyoming legislature's inclusion of the phrase "assets of the trust" was without significance.

Courts must interpret statutes by "giving effect to the legislature's intent," which first requires a court to look at the "ordinary and obvious meaning" of the words.  *Bear Cloud v. State*, 294 P.3d 36, 44 (Wyo. 2013) (quoting *LM v. Laramie Cty. Dep't of Family Servs.*, 171 P.3d 1077, 1079–80 (Wyo. 2007)).  Where a statute is "clear and unambiguous" a court simply looks at the statute's plain meaning.  *Id.* (quoting *LM*, 171 P.3d at 1079–80).  The Court does not believe this is an instance where the statute is ambiguous, and the parties have not argued such.  Therefore, the Court should look to the ordinary and obvious

meaning of the words in this statute.  Particularly, this requires the Court to look at the ordinary and obvious meaning of "assets of the trust."

According to Black's Law Dictionary, "asset" is defined as "an item that is owned and has value," "entries on a balance sheet showing the items of property owned, including case, inventory, equipment, real estate, accounts receivable, and goodwill," or "[a]ll the property of a person . . . available for paying debts or for distribution." *Asset*, BLACK'S LAW DICTIONARY (11th ed. 2019).  A "trust asset" is "[p]roperty that is covered by a fiduciary relationship between a settlor and a trustee for a beneficiary." *Id.* The definition of "trust asset" also directs a reader to the definition of "corpus," which is "[t]he property for which a trustee is responsible; the trust principal." *Corpus*, BLACK'S LAW DICTIONARY (11th ed. 2019).  These definitions do not indicate that proceeds of a liability insurance policy, which are for the benefit of an injured third party, and to which the beneficiaries of a trust have no right, should be included in the definition of "asset."

At least one treatise also supports the idea that proceeds of a liability insurance policy are not an asset of the trust.  GEORGE GLEASON BOGERT ET AL., THE LAW OF TRUSTS AND TRUSTEES § 803 (last updated June 2019).  Bogert discusses the prudence of a trust using trust income to pay for liability insurance where it is possible a trustee may be responsible for torts.  *Id.*  This treatise also distinguishes between types of insurance, such as liability insurance and life insurance, since a life insurance policy is a trust investment and considered a "trust asset."  *Id.*; *see also id.*, n.63 (explaining that premiums for liability insurance are payable out of trust income).  The distinction between these two types of insurance policies, which is supported by the persuasive caselaw Plaintiffs cite, again

indicates that the question of whether an insurance policy is an "asset of the trust" is answered based on who has the right to the policy's proceeds.

Though not expressly finding the statute ambiguous, the Court has also turned to Wyoming legislative history to ensure there is nothing that could aid in deciphering what "assets of the trust" was intended to mean in the WUTC. The earliest bill drafts of W.S. § 4-10-507 did not include the phrase "assets of the trust." *See* 03LSO–0010.W1; 03LSO–0010.W2; 03LSO–0010.W3.[2] Yet, the House Judiciary Standing Committee inserted the words "assets of the trust" in its amendments. *See HB0077–Uniform Trust Code: House Amendments*, https://wyoleg.gov/2003/Amends/HB0077HS001.htm (last visited June 9, 2020). The Court was not able to locate any minutes or other documents recording what the committee had in mind when it included the phrase "assets of the trust" within the bill.

Unfortunately, this section in the WUTC is one which does not have an analogous section in the draft UTC used to create the WUTC. *See generally* UNIF. TRUST CODE (UNIF. LAW COMM'N 2000). Section 505 in the draft UTC relates to a creditor's claims against the settlor, and Section 506 relates to overdue distributions. *Id.* §§ 505–506. Nothing in Article 5 includes any language that is similar enough to W.S. § 4-10-507 to assist the Court in this matter.

It is the finding of this Court that "assets of the trust" as used in W.S. § 4-10-507 was intended to ensure the prompt distribution of trust assets, those being real and personal property held within the trust and to be distributed in accordance with the terms of the trust.

---

[2] This section was formerly numbered as § 4-10-506. *See* 2003 Wyo. Sess. Laws ch. 124, § 1.

This achieves the goal that Defendants attribute to this statute and to similar limitations in the probate code. The liability policy at issue does not pay proceeds to the trust or its beneficiaries. The liability policy expired on June 7, 2018 and would have had no value at the time the notice was provided to Plaintiffs. Its only value was to pay monies to those injured pursuant to a covered claim. In that the policy had no transferrable value to the trust, it is not an asset of the trust to be distributed to trust beneficiaries. This lawsuit is not a claim against an asset of the trust and, as such, is not barred by the operation of W.S. § 4-10-507.

As interpreted by this Court, W.S. § 4-10-507 avoids providing a windfall to insurance companies. While the legislature is silent as to its reasons, the Court cannot envision that the legislature's purpose was to forever bar claims that would have been limited to the proceeds of a liability insurance policy and would not have impacted the distribution of the trust's assets. This is supported by the case Defendants cite, in that the case discusses the need for "administration of the estate" to be "commenced promptly" so that estate ownership may devolve to new and competent masters. *See Hartt v. Brimmer*, 287 P.2d 645, 653 (Wyo. 1955) (citing *In re Broderick's Will*, 88 U.S. 503, 509 (1874)). Thus, the need for prompt and final administration of a trust is about distribution of trust assets. *See id*. Where Plaintiffs only seek to recover proceeds from the liability insurance policy, any policy principles regarding finality and prompt administration of the trust are not at issue because Plaintiffs make no claim against assets of the trust that would have been distributed to the beneficiaries.

14

In the present case, Plaintiffs have limited recovery to the proceeds of the QBE Policy, a liability insurance policy, "or any other liability policies that provided coverage for the crash." ECF_1, ¶¶ 11, 26. Because the Court has concluded that the time limitation for creditors' claims against "assets of a trust" does not apply to the proceeds of a liability insurance policy, Plaintiffs' claim is not barred by W.S. § 4-10-507. Therefore, Plaintiffs' Complaint contains sufficient factual matter to state a claim for relief that is plausible on its face under the first issue raised in Defendants' Motion. Plaintiffs' claim is limited to the liability insurance policy proceeds, as any claim exceeding such proceeds would be a claim against trust assets and, as such, barred by W.S. § 4-10-507.

## B. Vicarious Liability of a Trust

The Court will now address the question of whether the Trust can be vicariously liable for Mr. Patterson's actions at the time the airplane crashed. There are two sub-issues to this question. First, the Court must ask if a trust can ever be vicariously liable under the WUTC. Second, the Court must determine if the Trust in our case can be vicariously liable under the WUTC, since Plaintiffs are suing successor trustees after the predecessor trustee was allegedly negligent.

### 1. Whether Trusts Can Be Vicariously Liable Under the WUTC

The first sub-issue for the Court to address within the question of vicarious liability is whether a trust itself can be vicariously liable for the actions of a trustee, agent, or representative. In their Motion, Defendants point out that the traditional view is that a trust is not "considered a distinct legal entity, but a 'fiduciary relationship' between multiple people." *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016)

15

(discussing this traditional view in the context of diversity of citizenship). For this reason, Defendants would have the Court conclude that a trustee or agent's actions cannot be attributed to a trust as they are attributable to a limited liability corporation or other corporate entity. According to Defendants, only a trustee may have agents that could give rise to liability. ECF_9 at 7.

Defendants further maintain that there could have been no agency relationship here, where Mr. Patterson was allegedly acting as the trustee and the agent. *Id.* at 8–9. Defendants point out that a person cannot act as his own agent. *See Maverick Motorsports Grp., LLC v. Dep't of Revenue*, 253 P.3d 125, 132–33 (Wyo. 2011); ECF_9 at 8. According to Defendants, then, Mr. Patterson could not have been an agent of the Trustee because Mr. Patterson would have been acting as agent for himself. Consequently, Defendants maintain that any potential claim should have been against Mr. Patterson's estate, not the Trust, but that is no longer possible because the statute of limitations for bringing a claim against Mr. Patterson's estate bars such a claim now. *See* Wyo. Stat. Ann. § 2-7-703; ECF_9 at 2, n.1.

In response, Plaintiffs contend that, while a trust was not traditionally an entity, the WUTC directly contradicts that traditional view. ECF_13 at 14. This is because the Act defines "person" as "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency or instrumentality, public corporation or *any other legal or commercial entity*." Wyo. Stat. Ann. § 4-10-103(xii) (emphasis added). Since a "trust" is included in the same definition as numerous other entities, Plaintiffs argue that it is an entity under Wyoming law. ECF_13 at 14. Plaintiffs also cite to a Utah Supreme Court case where

16

that court interpreted the Uniform Trust Code as having incorporated the standard of *respondeat superior*, making a trust "liable for the acts of a trustee when the trustee was acting within the scope of his responsibility as a trustee" under Section 1010. *M.J. v. Wisan*, 371 P.3d 21, 30 (Utah 2016); ECF_13 at 15.  Thus, Plaintiffs maintain the Trust can be vicariously liable for Mr. Patterson's act since he "was piloting the Trust's aircraft with the actual knowledge, authority, and permission of the Trust, and as its agent and representative." ECF_1, ¶ 17; ECF_13 at 15.

Defendants' reply first argues that merely because the WUTC's definition of "person" includes a "trust" does not mean trusts are a legal entity—especially since "trust" is not defined in the WUTC.  ECF_15 at 7.  Defendants further point out that Wyoming courts have defined a trust as a "fiduciary relationship" before and after the enactment of the WUTC. *Scotti's Drive In Rests., Inc. v. Mile High-Dart In Corp.*, 526 P.2d 1193, 1196 (Wyo. 1974); *Hicks v. Dowd*, 157 P.3d 914, 922 (Wyo. 2007); ECF_15 at 8.  Defendants contend that numerous other jurisdictions also refuse to treat trusts as a separate legal entity. ECF_15 at 8.  Further, Defendants argue that the Wyoming statute analogous to the one in Utah that incorporated *respondeat superior* relates only to the scope of personal liability for tort and contract claims.  Wyo. Stat. Ann. § 4-10-1010; ECF_15 at 8.  Defendants maintain that Wyoming law is clear there can be no relationship between Mr. Patterson as trustee and Mr. Patterson as agent to establish vicarious liability under the doctrine of *respondeat superior*.  ECF_15 at 8.  Therefore, Defendants contend that Plaintiffs' claim for vicarious liability must fail. *Id.*

The Court begins its analysis of this sub-issue by acknowledging that, indeed, the traditional view of a trust is simply a fiduciary relationship between various people.  *See Americold Realty Trust*, 136 S. Ct. at 1016; *Scotti's Drive In Rests., Inc.*, 526 P.2d at 1196; *Hicks*, 157 P.3d at 922.  Nevertheless, this traditional view of what a trust is does not necessarily speak to the question of whether a trust can be vicariously liable under the WUTC.  Based on the Parties' briefs and the Court's research, it appears that this question has not been addressed in Wyoming courts.

The answer to this question is in the WUTC.  W.S. § 4-10-1010(c) makes it clear that suit may be brought against the trustee, acting as a fiduciary, for torts arising from the administration of a trust, including control of trust property, even when the trustee has no personal liability.  *Id.* at § 4-10-1010(c); *see also Jackson v. Brown*, 801 S.E.2d 194, 203–04 (W. Va. 2017) (concluding that "a tort committed by a trustee in the course of administering a trust may be asserted in a judicial proceeding against the trustee in the trustee's fiduciary capacity, whether or not the trustee is personally liable for the claim" under an analogous West Virginia code section).  Conversely, the statute allows suit to be brought against the trust for torts arising from the administration of a trust where the trustee is personally liable.  This recognizes the liability of the trust for torts of the trustee.  You may sue the trustee, in his fiduciary capacity, for torts arising from the fault of the trustee.

This interpretation of W.S. § 4-10-1010(c) is reinforced by the Restatement (Third) of Trusts and Bogert's *The Law of Trusts and Trustees*.[3]  The Restatement initially notes

---

[3] Even if the Court had not concluded that the Wyoming Legislature has positively spoken on this issue in W.S. § 4-10-1010(c), it would be appropriate for the Court to use these authorities to decide that a trust can be vicariously liable for torts arising from control of trust property.  This is because "[t]he common law of trusts and principles of equity

the historic view that trustees were "sued personally by third parties" but explains that the modern approach "is to authorize suit against the trustee in the trustee's representative capacity." RESTATEMENT (THIRD) OF TRUSTS § 105 cmt. B (AM. LAW. INST. 2012). Bogert explains that "a majority of United States jurisdictions have adopted provisions of the Uniform Trust Code" and such statutes allow tort victims to assert claims against a trustee in the trustee's representative capacity. GEORGE GLEASON BOGERT ET AL., THE LAW OF TRUSTS AND TRUSTEES § 735 (last updated June 2019) (citing the draft UTC Section 1010(c), which is analogous to W.S. § 1010(c)); *id.* § 732 (discussing the evolution of a tort victim's right to assert claims against a trustee in the trustee's representative capacity "regardless of the trustee's personal liability" and citing the draft UTC's Section 1010(c)). By allowing trustees to be sued in their representative capacity for tort liabilities incurred to third parties during a trustee's control of trust property, the law indicates that trusts can be vicariously liable for control of that trust property. In the present case, the Complaint pleads sufficiently that Mr. Patterson was operating the plane "with the actual knowledge, authority, and permission of the Trust, and as its agent and representative" and that the plane was owned by the Trust. ECF_1, ¶¶ 8, 17. The Complaint also pleads that the Trust was or is "vicariously liable for the acts and omissions of its trustees, agents, and representatives." *Id.* ¶ 17. At this stage of the pleadings, the Court does not have enough information to know in what exact capacity Mr. Patterson was acting when he flew the plane. What the Court does know, though, is that a trust can own

---

supplement [the WUTC], except to the extent modified by this act or another statute of this state." Wyo. Stat. Ann. § 4-10-106.

property and by owning property it can be vicariously liable for torts committed during control of that property. The facts in Plaintiffs' Complaint support a plausible claim for relief that Mr. Patterson was controlling the Trust property when the plane crashed, and the Trust could be vicariously liable for the tort that arose out of Mr. Patterson's control of that property.

**2. Whether Successor Fiduciaries Can Be Sued in Their Representative Capacity for Actions, Errors, or Omissions of Prior or Predecessor Fiduciaries**

Even after concluding that a trust can be vicariously liable for liabilities incurred in control of trust property, there is another hurdle Plaintiffs must overcome before Plaintiffs' Complaint survives the Motion to Dismiss. The WUTC states that "[s]uccessor fiduciaries are not liable for actions, errors or omissions of any prior or predecessor fiduciaries."[4] Wyo. Stat. Ann. § 4-10-1011. Defendants maintain that this code section also requires Plaintiffs to have brought direct claims against the pilot. ECF_9 at 8–9. The Court must now decide whether this section limits Plaintiffs' claim since Plaintiffs are suing the successor Co-Trustees—who are fiduciaries as defined in the Wyoming Uniform Trust Code—for the actions of Mr. Patterson, a predecessor fiduciary.

The Court must interpret W.S. § 4-10-1011 to determine whether the successor Co-Trustees can be sued in their representative capacity for the actions of Mr. Patterson. As noted previously, Courts interpret statutes by "giving effect to the legislature's intent." *Bear Cloud*, 294 P.3d at 44 (Wyo. 2013) (quoting *LM*, 171 P.3d at 1079–80). First, courts

---

[4] The definition of "fiduciary" in the WUTC includes "a trustee under a testamentary or other trust." Wyo. Stat. Ann. § 4-10-103(vii).

look at the "ordinary and obvious meaning" of the words.  *Id. at* 44 (quoting *LM*, 171 P.3d at 1079–80).  Where a statute is "clear and unambiguous" a court simply looks at the statute's plain meaning.  *Id.* (quoting *LM*, 171 P.3d at 1079–80).  "An ambiguous statute is one whose meaning is uncertain because it is susceptible to more than one interpretation."  *Id.* (quoting *LM*, 171 P.3d at 1079–80).  Where a statute is found ambiguous, a court may "resort to the general principles of statutory construction."  *Id.* (quoting *LM*, 171 P.3d at 1079–80).  The trouble with W.S. § 4-10-1011 is that it does not specify whether successor trustees cannot be *personally* liable for actions, errors or omissions of prior or predecessor fiduciaries, or that successor trustees cannot be liable in their *representative* capacity.  Therefore, the Court concludes the statute is ambiguous.

The basic rules of statutory construction allow courts to attempt "to determine legislative intent by considering the type of statute being interpreted and what the legislature intended by the language used."  *Id.* (quoting *LM*, 171 P.3d at 1079–80).  Here, the Court seemingly should be able to gain an understanding of the legislature's intent from the legislative history of 2003 House Bill No. 77—the vehicle used to adopt the WUTC.  Yet, after an extensive review of legislative history, there appears little to glean regarding the purpose of W.S. § 4-10-1011.  This section appeared in the earliest bill draft and remained unchanged in the enacted bill.  *See* 03LSO–0010.W1; H.B. 77 (Wyo. 2003).  The few discussions regarding the bill that were formally recorded through minutes, letters, or emails make no reference to the intent of W.S. § 4-10-1011.

Were this code section one included in the draft UTC, then the Court could perhaps garner some understanding of the legislature's intent from the commentary provided there.

21

However, the draft UTC does not include any analogous section on liability of successor fiduciaries for actions of predecessor fiduciaries. *See generally* UNIF. TRUST CODE (UNIF. LAW COMM'N 2000). The Wyoming legislature added the section about successor trustees' liability on its own without leaving any evidence of *why* it did so.

The rules of statutory construction also allow courts to be "guided by the full text of the statute," noting the statute's "internal structure and the functional relation between the parts and the whole." *Id.* (quoting *LM*, 171 P.3d at 1079–80). Further, courts should presume that the legislature "intended a reasonable, just, and constitutional result." *Id.* (quoting *Kunkle v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 109 P.3d 887, 890 (Wyo. 2005)). Here, a reasonable and just result would dictate that the legislative intent in W.S. § 4-10-1011 was to prevent successor fiduciaries from being *personally* liable for actions, errors or omissions of prior or predecessor fiduciaries. Such a conclusion is supported by where the code section is placed in the WUTC—as it is adjacent to the code section regarding limitations on the personal liability of fiduciaries. *See* Wyo. Stat. Ann. § 4-10-1010. In resolving ambiguities in a statute, the court must look to the entire act. W.S. § 4-10-1010(c) specifically permits suit against the trustee in its representative capacity for torts for which the trustee is not personally liable. Therefore, Defendants' reading of W.S. § 4-10-1011 conflicts with the provisions of W.S. § 4-10-1010. If third parties could not bring suits against successor fiduciaries in their representative capacities for torts committed by a prior trustee in the control of trust property, then a trust's liability would simply extinguish upon the succession of trustees. Such an occurrence could result in a windfall to the trust, which would defeat the policy purposes behind allowing trusts to

22

be sued and would undermine notions of equity and justice. Therefore, the Court concludes that the legislative intent in W.S. § 4-10-1011 was to limit successor trustees from *personal* liability arising out of a predecessor or prior trustee's actions. Plaintiffs' claims in this matter do not seek to impose personal liability upon the successor trustees.

For these reasons, W.S. § 4-10-1011 does not limit Plaintiffs' ability to make a claim for vicarious liability against the successor Co-Trustees in their representative capacity and, upon this sub-issue, Plaintiffs' claim survives the Motion to Dismiss.

## **CONCLUSION**

For the reasons stated herein, the Court concludes Plaintiffs have stated a claim for relief that is plausible on its face and sufficient to survive Defendants' Rule 12(b)(6) Motion to Dismiss.

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is DENIED.

Dated this 22nd day of June, 2020.

MARK L. CARMAN
UNITED STATES MAGISTRATE JUDGE